467 So.2d 1243 (1985)
STATE of Louisiana, Appellee,
v.
Larry FORD, Appellant.
No. 16864-KA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1985.
Rehearing Denied May 3, 1985.
*1244 Richard E. Hiller, Asst. Indigent Defender, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Scott J. Crichton, John A. Broadwell, Asst. Dist. Attys., Shreveport, for appellee.
Before MARVIN and FRED W. JONES, JJ., and PRICE, J. Pro Tem.
MARVIN, Judge.
Larry Ford appeals his conviction of second degree murder of his girlfriend, Evelyn Green. He contends that the district court should have entered a judgment of the lesser included offense of manslaughter in response to his motion for post-verdict judgment of acquittal and alternatively, a new trial. Defendant's motions were based on the contention that the State failed to prove specific intent, an essential element of second degree murder. LRS 14:30.1.
Ford dated the victim for more than three years. They did not marry but conceived a child born under the name of Tadashia Danielle. Ford contends that a dispute over the care and custody of two-year-old Tadashia brought about the "sudden passion" or "heat of blood" that provoked the shooting and negated specific intent.[1] Our scope of evidentiary review is limited to the legal sufficiency of the evidence. We find that the jury did not abuse its function and affirm the conviction.

FACTS
On November 12, 1983, Ford visited a Vivian grocery store owned by his ex-employer from whom he borrowed $150 to pay off some debts.
Ford later traveled to Plain Dealing where he used some of the money to purchase a .22 caliber pistol and a box of shells at Higdon's Short Stop Grocery. Ford testified that Ms. Green drove him to the store and waited outside in her car. He said he had never before owned a gun and testified that he needed one for "protection" from a group of Plain Dealing men that had been calling him a Vivian "river rat." Ms. Green then went to her job at Pizza Hut in Vivian. Ford spent that night with friends.
The next day, with the gun inside his pants, Ford walked into the Vivian Pizza Hut while Ms. Green was working her Sunday afternoon shift. The two were observed *1245 in a conversation. One restaurant employee and a customer testified that their voices were not "raised," while Ford said that a verbal altercation began when Ms. Green threatened to take Tadashia and not to allow him to see her. Another employee said Ford went around the counter, grabbed Ms. Green by the arm in an apparent attempt to get her to go outside. Ms. Green was refusing. Ford then pulled the pistol and shot Ms. Green once in the chest. After she fell from the first shot, Ford shot Ms. Green a second time below the neck.
Ford then noticed customers approaching the restaurant entrance. He shouted for them to get back. The customer in the restaurant motioned for a man outside to telephone police. One employee testified that Ford then raised the gun into the air and said, "anyone else?" Ford then put the gun to his neck and fired one shot. Ms. Green died of her wounds. Ford recovered after hospital confinement.
Following his conviction, Ford moved for post-verdict judgment of acquittal and alternatively, for a new trial. The standard of review under each motion, however, is different. See CCrP Art. 821 and Official Revision Comment; Art. 851; State v. Byrd, 385 So.2d 248 (La.1980); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir. 1983); Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).

POST VERDICT JUDGMENT OF ACQUITTAL V. MOTION FOR A NEW TRIAL
The defendant may move for a post verdict judgment of acquittal following the verdict. A motion for a post verdict judgment of acquittal must be made and disposed of before sentence.
CCrP Art. 821(A)
If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
CCrP Art. 821(C)
The thrust of Ford's argument for post verdict acquittal under Art. 821(C) is that the trial court should have rendered a judgment for the lesser offense of manslaughter and that we should correct this failure under the authority of Art. 821(E). See LRS 14:31(1).
Ford did not separately brief his assertion that the trial court should have granted a new trial because the verdict is contrary to the law and the evidence. CCrP Art. 851(1). He relies instead on his general insufficiency argument. CCrP Art. 858 precludes us from reviewing the granting or the refusal of a motion for new trial except for error of law.
The scope of review in these situations poses some dilemma until the Official Revision Comment following Art. 821, adopted in 1982, is considered.
Since the abolition of the directed verdict in jury cases, the Supreme Court has recognized its authority to reverse convictions and dismiss the charges if the evidence does not support the conviction.
...
The test on appeal to determine the "sufficiency" of evidence is no longer the "total lack of evidence" test. [CCrP Art. 851(1)] The test now is whether a reasonable fact finder must have a reasonable doubt.... The test incorporated as the standard for judgments of acquittal defers to the jury's finding by requiring that the evidence be viewed in a light most favorable to the state. However, if the evidence is legally insufficient the verdict must be set aside and either a modified verdict or a judgment of acquittal must be entered....
The trial court or appellate court may modify the jury's verdict if the verdict is not supported by the evidence but a lesser included responsive verdict would be supported....
The district attorney may seek review of a post verdict judgment of acquittal or a judgment modifying a verdict. Such *1246 review does not violate double jeopardy because if the appellate court merely reinstates the jury's verdict no new trial is necessary. * * *
Citations omitted. Bracketed material supplied. See also Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), noted at 43 La.L.R. 1061; LSA-Const. Art. 5, § 10(B); State v. Ruple, 426 So.2d 249 (La.App. 1st Cir. 1983), concurring opinion.
Where there is no legal ground for a new trial, the trial court may grant a new trial where the ends of justice may be served. CCrP Art. 851(5). This subsection, however, does not authorize a new trial when the evidence has been found legally insufficient (the former total lack of evidence test under Art. 851(1)). In such a situation the trial judge must consider the motion as if it were either a motion for a post verdict judgment of acquittal under Art. 821, the ruling on which is reviewable (See Art. 821 Comments and authorities, supra, State v. Korman, supra) or as a motion for a new trial under Art. 851(5). See State v. Bennett, 454 So.2d 1165 (La. App. 1st Cir.1984), writ denied; State v. Gallow, 452 So.2d 227 (La.App. 1st Cir. 1984), writ denied.
Professor Joseph suggests that the adoption of Jackson v. Virginia standard does not create a new standard in circumvention of our own constitutional mandate, but rather it "expands the understanding of the circumstances under which inadequate factual support for the jury's verdict becomes a reviewable question of law." Joseph, Developments in the Law, 1982-1983: Postconviction Procedure, 44 L.L.R. 447 at p. 481. See also State v. Mathews, 375 So.2d 1165 (La.1979), and State v. Byrd, supra.
Our review of the record most favorably to the prosecution convinces us that any rational trier of fact could have found that Ford had the specific intent to kill or inflict great bodily harm on Ms. Green.
Specific intent under LRS 14:10 may be inferred from the circumstances and need not be proven directly as in the case of other elements. LRS 15:445 in part. State v. Sanders, 431 So.2d 833 (La. App. 2d Cir.1983). Specific intent may be inferred where witnesses testify that a defendant voluntarily pointed and fired a gun at his victims. State v. Neslo, 433 So.2d 73 (La.1983). The inference that defendant desired the consequence of death to follow his act may be drawn from the fact that the defendant shot his victim in the head at close range. State v. Noble, 425 So.2d 734 (La.1983).
Ford did not own a gun until he purchased the pistol hours before the homicide. Eyewitnesses testified about the details of how defendant shot Ms. Green two times. The jury obviously did not believe Ford's version of how and why he fired the shots.
We find no error in the trial court's rulings of which Ford complains. Ford's conviction is supported by the record and is AFFIRMED.
NOTES
[1] Art. 31(1) manslaughter "would be murder ... but ... is committed in sudden passion or heat of blood immediately caused by provocation..." The manslaughters that are committed "without any intent to cause death or great bodily harm" in Art. 31(2)(a) and (b) are defined differently.