MARVIN, Judge.
Manuel appeals his conviction by jury of 2d degree murder of John Ebarb and assigns three errors, two of which relate to the sufficiency of the evidence to convict and the third to the closing argument of the prosecutor. We affirm.
ASSIGNMENTS 1 & 2
SUFFICIENCY OF THE EVIDENCE
The trial court’s denial of Manuel’s motion for a new trial (his first assignment) is not subject to review except for error of law. In this assignment Manuel contends that the guilty verdict was contrary to the law and the evidence. CCrP Arts. 851, 858; State v. Korman, 489 So.2d 1099 (La.App. 1st Cir.1983); and State v. Ford, 467 So.2d 1243 (La.App.2d Cir.1985). We shall consider the first assignment with the second assignment (legal sufficiency of the evidence) under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and LSA-Const. Art. 5, § 10(B). See also State v. Jones, 451 So.2d 35 (La.App.2d Cir.1984).
Manuel specifically complains that the State failed to prove that the homicide was not justified under LRS 14:20(1) .(self defense) and that Manuel specifically intended to kill or to inflict great bodily harm upon Ebarb, an essential element of the crime. LRS 14:30.1; 10(2).
We review the evidence most favorably toward supporting the verdict. Jackson, supra; State v. Byrd, 385 So.2d 248 (La.1980).
FACTS AND LAW
The homicide victim, John Ebarb, was the manager of a Mexican restaurant in Bossier City. Manuel lived with Quincella Hallman, mother of Stephanie Jackson, a restaurant employee. While at work on the night of the crime, Stephanie argued with a fellow employee, Gary Dotie, about his sexual advances toward her. Kurt Jackson, Stephanie’s husband, was to drive her home when Stephanie’s workday ended at 9:00 p.m. Stephanie said Gary had made threats to her to “kick Kurt’s a..” when Kurt arrived. A few minutes before closing time, Gary’s brother, Don, walked up to a take-out window of the restaurant. Stephanie said she heard Gary say to Don, “watch the b.-.„ while I whip her husband’s a...” Don then returned to his car to wait for Gary.
Stephanie telephoned her mother’s residence and sought Manuel’s help if trouble arose between Kurt and Gary. Stephanie said she told Kurt through the take-out window about 9:00 p.m. what Gary and Don were planning and that Manuel was on his way to help. Kurt waited in his car, parked near Don Dotie’s car.
Gary departed the restaurant and walked toward Don’s car. Gary said that as he walked by the driver’s side of Don’s car, Kurt called out to him from inside his car. Gary said that Manuel arrived in a blue Pontiac, “flying over” and parked near Kurt’s car and about 50 feet from Don’s car while Gary walked toward Kurt’s car. Just before or after Manuel drove up, Jurt got out of his car and approached Gary, who was walking toward him. Don went to Gary’s side and Manuel went to Kurt’s side as the confrontation began. Stephanie remained in the restaurant. Quincella had ridden with Manuel to the scene, and was standing nearby.
Gary and Don testified that no physical contact occurred during the ensuing argument. Kurt also said no “swings” were made. Manuel testified that Gary told Kurt, “you don’t know your wife” and that Don threatened to “drop” or “waste” him. Manuel also said he thought Don might *990 have had a weapon because Don kept one hand in his pocket.
The victim, Ebarb, and two other restaurant employees came out of the restaurant, approached the group, and stood a few feet into the parking lot from the corner of the restaurant. The other employees were behind Ebarb near the restaurant building, but had a clear view of Ebarb and the group.
Ebarb told the Doties, Kurt, and Manuel to break up their argument or he would call the police. The group continued to argue and Ebarb repeated his admonition about calling the police.
Apparently in response to Ebarb’s second admonition, the foursome began to dis-pérse. Gary said while he walked toward Don’s car to leave, Manuel “took off running” toward his car, took out a gun, and fired “three or four shots.” Gary ducked behind Don’s car.
The two employee-witnesses said Manuel “turned around real fast” and fired one shot squarely in the direction of Ebarb and the Dotie brothers, who were in line with Manuel. One employee said Manuel said “I’ve got something for you” just before he fired the first shot. The two employees then ran inside the restaurant where one caused the police to be called. Ebarb then staggered into the restaurant exclaiming that he had been shot.
After the first shot was fired, Manuel ran to his car and drove up behind the parked car of Don Dotie. Gary Dotie, who had “ducked” behind his brother’s car, testified that Manuel, inside his car, then fired at him through Manuel’s passenger side window and quickly drove away.
Quincella, Kurt, and Don, who had remained outside the restaurant, scrambled for safety when the shooting began and were not able to testify with certainty about the actions of Gary Dotie and Manuel. Don said he was running toward the take-out window before the second shot was fired. Quincella said she heard a second shot but did not know who fired it. Kurt generally corroborated Manuel’s testimony, stating that Gary got “something” out of his trunk and acknowledging that he told police investigators that only Manuel had a gun.
Manuel drove to Quincella’s home and placed the gun on a coffee table after removing the empty cartridges and flushing them down the toilet. He then went outside to clean the broken window glass out of his car. While he was outside, Kurt, Quincella, and Stephanie arrived and told Manuel that Ebarb had been shot. The pistol belonged to Quincella. Quincella went inside and placed the gun under the refrigerator. Kurt and Stephanie went home.
Police arrested Manuel at Quincella’s home about six hours after the homicide and after questioning witnesses. Quincella consented to the search of her home where the pistol was found under the refrigerator.
SUFFICIENCY OF EVIDENCE TO CONVICT:
ASSIGNMENTS 1 and 2
Manuel complains that his first shot was fired into the air as a warning to the Dotie brothers not to produce or use any weapons. He contends that the second shot fired from inside his car was also intended merely as a warning to stop Gary Dotie from shooting him.
These arguments are based solely on Manuel’s version of the incident, which was only partly corroborated by Kurt and Quin-cella. The scope of our review for eviden-tiary sufficiency does not, however, extend to witness credibility. State v. Jenkins, 456 So.2d 174 (La.App.2d Cir.1984). Evi-dentiary sufficiency in criminal cases is a question of law. We determine whether the verdict is supported by quantitatively sufficient evidence by viewing all evidence in the light most favorable to the state. The facts deemed most favorable to the state must be sufficient for any rational trier of fact to conclude beyond a reasonable doubt that the defendant committed every essential element of the offense. *991 Jackson, supra; Byrd, supra; State v. Sutton, 436 So.2d 471 (La.1983).
One of the shots fired by Manuel struck and killed Ebarb. The bullet entered the right side of Ebarb’s chest, curved left to puncture the aorta, and caused massive, fatal blood loss. The bullet removed from Ebarb’s body was fired from the gun found in Quincella’s home. Although the evidence does not conclusively show which of Manuel’s shots struck and killed Ebarb, we are convinced that any rational trier of fact could have found beyond a reasonable doubt that either of the shots was fired with specific intent to kill or inflict great bodily harm and were not fired in self defense. See LRS 14:10, 14:20(1), and comments thereto.
Specific intent may be inferred from circumstances surrounding the offense and the conduct of a defendant. LRS 15:445. Specific intent may here be inferred from direct eyewitness testimony that Manuel deliberately and voluntarily pointed and fired his gun in the direction of one or more persons. It is immaterial that the victim is not the intended victim whose death or great bodily harm defendant actively desired. Any rational trier of fact could have found that defendant “actively desired the prescribed criminal consequences [death or great bodily harm] to follow his act ...” of shooting toward a group of people, one of whom was the intended victim. LRS 14:10; 30.1; LaFave and Scott, Criminal Law, § 35, p. 252 (1972); State v. Neslo, 433 So.2d 73 (La.1983); Ford, supra.
In addition to the direct evidence offered by eyewitnesses, there was other evidence from which the jury could have inferred facts indicating specific intent and lack of justification. Manuel did not contact police to explain or justify his actions after learning of Ebarb’s death. Instead, Manuel flushed the spent shells down the toilet.
One restaurant employee said the parking lot was almost empty during the incident because other stores in the shopping center closed three hours before the restaurant. Manuel could have easily driven out of the parking lot and away from further confrontation, especially after the foursome began to disperse following Ebarb’s admonition. The shopping center has at least five exit routes. The jury could have deduced that Manuel did not have to drive near or past the Dotie vehicle to escape and did not have to intentionally pull up behind the Dotie car and block it for the purpose of further confrontation.
Even if it be assumed that the second shot was fired in self defense, the jury could have found that the first and not the second shot struck Ebarb. One criminalis-tics expert said he found no dents or scratches on the bullet removed from Ebarb’s body that would normally be present on a bullet shot through glass. The expert opined that the bullet did not pass through window glass, indicating that the first shot struck Ebarb. This opinion evidence inferentially supports the eyewitness testimony that Manuel first shot in the direction of Ebarb and the Dotie brothers and that Ebarb, perhaps, was trying to go inside the restaurant when the second shot was fired.
When all conflicts in the testimony are resolved in favor of the prosecution, the evidence shows that Manuel participated in a heated argument, obtained a pistol from his car, fired in the direction of Ebarb and the Doties, drove his car to the rear of the Dotie vehicle and then fired another shot at Gary Dotie. From these facts, the jury’s conclusion that Manuel had specific intent to cause death or great bodily harm to either or both Gary Dotie and John Ebarb is eminently reasonable. The jury could have also concluded from direct testimony about the circumstances, and by weighing the biases and interests of the various witnesses, that Manuel’s beliefs that he was in imminent danger of losing his life or receiving great bodily harm and that deadly force was necessary to “repel” any aggression from Gary Dotie were not reasonable beliefs. See LRS 14:20(1), 14:21, and comments thereto. We find the evidence legally sufficient to convince any *992 trier of fact of guilt beyond a reasonable doubt.
ASSIGNMENT 3
PROSECUTORIAL ARGUMENT
During closing argument, the prosecutor suggested to the jury that if Manuel was not held responsible for the death of John Ebarb, either he or Quincella could reclaim the gun and might shoot someone else in the future. The prosecution also suggested that if Manuel were acquitted of this offense, a prosecutor trying defendant for any future crime would not be allowed to bring this offense to the attention of another jury. Defense counsel contemporaneously objected and moved for mistrial. The trial court denied a mistrial but admonished the jury. CCrP Art. 771.
Manuel does not question the quality of the trial court’s admonition, but complains that the prosecutor’s comments must have influenced the jury and that only a mistrial would have assured him of a fair trial in the future.
The argument of each counsel should be confined to the law, the evidence, and conclusions to be drawn therefrom. An appeal to prejudice is neither ethical nor permissible. CCrP Art. 774.
“A prosecutor should refrain from argument which tends to divert the jury from its duty to decide the case on the evidence by injecting issues broader than guilt or innocence of the accused ... [of the instant offense] ... under the controlling laws ...”
State v. Messer, 408 So.2d 1354, 1356 (La.1982).
“A prosecutor’s predictions as to the consequences of a not guilty verdict, or the societal costs of such a result, are clearly improper and should be avoided.”
State v. Barrow, 410 So.2d 1070, 1075 (La.1982).
We agree that the prosecution’s comments were improper. The comments, however, under the circumstances, fall within the scope of CCrP Art. 771 which mandates only an admonition and merely permits the trial court to declare mistrial if the court is not satisfied that an admonition will assure defendant a fair trial. An admonition is insufficient only when the trial court, in its informed discretion, determines that the comments are so far beyond the prescribed scope of argument that the jury will likely be tempted to rely on the comments in determining guilt or innocence. A reviewing court will not overturn a conviction on this basis unless it is clearly convinced that the remarks actually prejudiced the defendant, influenced the jury, and contributed to the verdict. Messer, supra; State v. Jackson, 480 So.2d 937 (La.App.2d Cir.1985); State v. Doolittle, 486 So.2d 896 (La.App.2d Cir.1986).
We do not find that the prosecutor’s remarks influenced the jury or contributed to the verdict, considering the ample evidence of guilt. Prejudice merely suggested is not prejudice shown. The trial judge thoroughly admonished the jury and did not abuse his informed discretion in refusing to grant a mistrial under the circumstances summarized.
DECREE
Defendant’s conviction is AFFIRMED.