535 So.2d 963 (1988)
STATE of Louisiana, Appellee,
v.
Ricky LOTT, Appellant.
No. 19943-KA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1988.
Mullins & Gibson by Roderick P. Gibson, Ruston, for appellant.
*964 William J. Guste, Jr., Atty. Gen., Tommy J. Adkins, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., Ruston, for appellee.
Before FRED W. JONES, Jr., NORRIS and LINDSAY, JJ.
NORRIS, Judge.
The defendant, Ricky Lott, was charged by bill of information with two counts of simple burglary, LSA-R.S. 14:62. He proceeded to a jury trial and was found guilty as charged. Lott was sentenced to two consecutive terms of twelve years at hard labor. He now appeals, advancing five assignments of error. Finding merit in his argument as to sufficiency of evidence, we reverse and order the defendant discharged.

Facts
In the late night or early morning hours of June 27-28, 1986, a children's clothing store in Ruston, called "Early Ages," was burglarized. About $16,000 of merchandise was taken. The break-in was discovered by Mr. Stuckey, the store manager, who arrived that morning to find the store in upheaval and the back door pried open. Inspector Hermes, when called to the scene, discovered and photographed shoeprints that started behind the store and ran 50-60 feet to the rear of another store, Mollie Rainwater's, where some of the Early Ages merchandise was found.
Less than a month later, on the night or morning of July 16-17, another clothing store in Ruston, called "The Clothes Pen," was burglarized. The store's owner, Mrs. Wright, testified the burglars had stolen "at least half the store," and estimated her losses at $30,000-$40,000. There was no sign of forced entry; the burglars apparently came in through a window that had been previously unlocked. Included among the missing items was a distinctive yellow felt ladies' hat that bore an accidental ball-point pen marking. Store employees recalled that the day before the burglary, an unidentified black woman had come to the store, expressed an interest in the hat, and asked that it be set aside so she might purchase it later. Items taken from The Clothes Pen were fixed with security tags bearing the store's name; the tags, if not removed at the time of the purchase, activate an alarm when they are carried out the door. For reasons not explained at trial, the police suspected Angela Anderson and her boyfriend, Johnny Lott (the defendant's cousin), in these offenses.
At about 3:00 a.m. that day, July 17, Louisiana Tech police officer Debra White stopped a car for going the wrong way on a one-way street a few blocks from The Clothes Pen. The car was an older model Buick Electra occupied by a driver and one passenger. The driver produced a valid Louisiana driver's license in the name of Ricky Lott. At trial Officer White identified the defendant as the driver who produced the license.
Officers learned that Johnny Lott was living in Charleston Square Apartments in Ruston. With the consent of the owner, Inspector Kavanaugh of the Ruston Police Department occupied a vacant apartment across the street from Johnny Lott's on July 22. Officers on the stake-out soon discovered the apartment was being occupied both by Johnny and by Angela Anderson. Ricky Lott was never seen at the apartment.
Late on the evening of July 28, Johnny and Angela loaded some luggage in their older model LTD and Johnny placed a garbage bag in the dumpster in front of the apartments. Angela was carrying a yellow hat that matched the description of the one stolen from The Clothes Pen. Noting this, Inspector Kavanaugh summoned other officers to follow the LTD while he retrieved the garbage bag from the dumpster. It contained a security tag from The Clothes Pen. Inspector Kavanaugh radioed the other officers to stop the LTD and arrest its occupants; this was done as the car was entering the interstate at Grambling. Officers obtained search warrants for the car and the apartment. The searches yielded several items taken from Early Ages and The Clothes Pen, as well as other stolen goods, an illegal pistol (Johnny Lott was a convicted felon), and a small quantity of drugs and paraphernalia. Both Johnny *965 and Angela were arrested on charges of illegal possession of stolen things valued at $500 or more, possession of marijuana and possession of drug paraphernalia. Johnny was also arrested for illegal possession of a firearm by a convicted felon.
The next day, July 29, officers spotted Ricky Lott's car, the Electra, being driven by two unidentified black males and leaving Johnny Lott's apartment. They followed and found the Electra stopped on a roadside about a mile away. The car's trunk was wide open and the two black men were standing beside it; neither of them was Ricky Lott and neither was arrested. Officers nevertheless impounded the car and obtained a search warrant. The search yielded, from the trunk, a pair of tennis shoes whose treads allegedly resembled one of the sets of shoeprints photographed behind Early Ages.
Inspector Kavanaugh learned that Ricky Lott was at the LSU Medical Center for knee surgery. He asked authorities there to notify him upon Ricky's release; he wanted to be present with an arrest warrant. However, Ricky disappeared from the hospital that night. When he was later taken into custody, Officer McKenzie of the Farmerville Police Department seized from his person an address book that was introduced into evidence. The defendant was originally booked on illegal possession of stolen things but was eventually billed on two counts of simple burglary.
Both Angela Anderson and Johnny Lott gave recorded statements to the police on December 11. Johnny's statement was given after he had already been sentenced for the reduced charge of illegal possession of stolen things. Both Johnny and Angela agreed to testify at Ricky Lott's trial in exchange for their guilty pleas to reduced charges and the dismissal of other pending charges. At trial, Angela Anderson testified that Ricky and Johnny Lott gave her several of the stolen things.
When Johnny Lott took the stand, however, he recanted his prior statement. The prosecutor laid a foundation and attempted to cross examine him. Johnny admitted telling Inspector Kavanaugh that he and Ricky Lott entered The Clothes Pen and got the clothes, and that he was with Ricky Lott when Early Ages was burglarized. However, he asserted that Inspector Kavanaugh had coerced him to give the statement because "they wanted a case on Ricky." He insisted he merely told the inspector "what he wanted to hear," R.p. 154, even though the inspector's alleged promises do not "show up in the statement." R.p. 160. The text of the recorded statement was not offered in evidence. Johnny Lott stated that he received the stolen clothes from "a dude named Roger Hall." R.p. 151. Later, he stated the clothes belonged to Angela, who had received them from Ricky. R.p. 154. At one point he said he gave the clothes to Angela. R.p. 156. He finally admitted that he and "Roger Hall" put the stolen clothes into Ricky's car on the night Ricky got stopped. R.p. 156.
As noted, Ricky Lott went to trial on June 15 and 16, 1987, and was found guilty on both counts of simple burglary by a six-member jury. His motions for new trial and to arrest the judgment were both denied, and he perfected the instant appeal.

Discussion: Sufficiency of Evidence
By his first and third assignments of error, defendant claims the evidence used against him did not meet the circumstantial evidence test, LSA-R.S. 15:438, and was not sufficient to convict. The essential elements of the crime of simple burglary are unauthorized entry of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein. LSA-R.S. 14:62.
The constitutional standard of review for sufficiency of evidence to support a conviction is whether, viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984). The statutory rule as to circumstantial evidence *966 is that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every hypothesis of innocence. LSA-R.S. 15:438. The statutory rule is not a purely separate test from the Jackson standard in cases where circumstantial evidence is used to prove an element of a crime. State v. Wright, 445 So.2d 1198 (La.1984). Ultimately, the Jackson standard is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. State v. Wright, supra. An appellate court reviewing the sufficiency of the evidence must resolve any conflict in direct evidence by viewing the direct evidence in light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient to persuade a rational factfinder beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Jacobs, 504 So.2d 817 (La.1987). Exclusion of every reasonable hypothesis of innocence is a component of the more comprehensive reasonable doubt standard, when circumstantial evidence is used to convict. Thus, the circumstantial evidence rule may not establish a stricter standard of review than the more general Jackson v. Virginia formula; but a hypothesis of innocence that is sufficiently reasonable and sufficiently strong must necessarily lead a rational factfinder to entertain a reasonable doubt about guilt. See United States v. Bell, 678 F.2d 547 (5th Cir.1982); State v. Sutton, supra. Thus we have examined the circumstantial evidence in this case to determine whether it excludes every reasonable hypothesis of innocence and, if not, whether its failure in this regard creates a reasonable doubt as to the defendant's guilt, even when viewed together with direct evidence that is interpreted in light most favorable to the prosecution.
The owners of the stores established that break-ins and thefts had occurred but they in no way implicated the defendant. Mrs. Wright testified that her employees had prepared a list of the stolen items, but neither the list nor any summary of its contents was ever introduced in evidence.
The evidence placing Ricky Lott at the Early Ages burglary was testimony comparing photographs of the shoeprints found behind the store with some shoes introduced in evidence. This is circumstantial evidence. Testing it for the exclusion of any reasonable hypothesis of innocence, we note that neither Officer Hermes, who took the pictures, nor Inspector Kavanaugh, who testified about them, qualified as an expert in photography or shoeprint identification. Kavanaugh freely admitted that shoeprints, unlike fingerprints, are not unique and do not necessarily identify the shoe. More troubling is the admission that there were several sets of prints found; and the thrust of Inspector Kavanaugh's testimony on direct examination was that one of the prints resembled Johnny Lott's shoes. Only on cross examination did he remark, in an offhanded way, that another print was similar to the tread on one of the shoes found in Ricky Lott's car. He added, "I didn't say that they were the same shoes. I can't say they are the same shoes." R.p. 147. No one testified that the shoes actually belonged to Ricky Lott. In fact, because they were seized from an open trunk within the immediate control of two unidentified men, the shoes were not shown ever to have been in Ricky Lott's possession. This was the only fragment of record evidence linking the defendant with the unauthorized entry of Early Ages, and we must characterize this as weak circumstantial evidence. See State v. Chism, 436 So.2d 464 (La.1983). Assuming it to prove every fact it tends to prove, this evidence proves that the person who burglarized Early Ages was wearing shoes with treads similar to those found in the defendant's car but not in the defendant's possession. It does not exclude the reasonable hypothesis that the print was left by one of the unidentified men who were in possession of the car from which the shoes were seized.
The evidence placing him at The Clothes Pen on the morning of the burglary was as follows. Officer White stopped Ricky Lott early that morning for driving *967 the wrong way on a one-way street roughly ten blocks from the store. Proof that the defendant was near in time and place to a burglary is admissible circumstantial evidence. State v. Hammonds, 434 So.2d 452 (La.App.2d Cir.1983), writ denied 439 So.2d 1074 (La.1983); State v. Lowe, 485 So.2d 99 (La.App.2d Cir.1986), writ denied 488 So.2d 199 (La.1986). This evidence tends to prove that Ricky Lott was driving a car ten blocks from the scene of a burglary at 3:00 a.m., after or perhaps before the crime had occurred. There was also an address book found on Ricky Lott's person when he was taken into custody. According to the prosecutor's summation, this book contained a list of clothes sizes stolen from The Clothes Pen. The book was admitted into evidence without objection and the jury was free to examine it. However, no one from The Clothes Pen testified about what sizes of clothes had been taken from the store, nor was such a list ever admitted; under the circumstances there is absolutely no foundation for treating this address book as conclusive evidence of unauthorized entry into either store.
Evidence incriminating the defendant in both crimes was his departure from the hospital. Flight and attempt to avoid apprehension are circumstances from which the jury may infer guilt. State v. Fuller, 418 So.2d 591 (La.1982); State v. Davies, 350 So.2d 586 (La.1977); State v. Sampson, 480 So.2d 952 (La.App.2d Cir.1985). No one testified that Ricky Lott had learned that his arrest was imminent; Inspector Kavanaugh only testified that he asked hospital authorities to notify him upon the patient's discharge. Kavanaugh did not even speculate that the medics talked to Ricky Lott. Thus this evidence would tend to prove that the defendant unexpectedly left the hospital but it does not exclude the reasonable hypotheses that he decided against the surgery or that he fled to escape prosecution for illegal possession of stolen things.
To link the defendant to the burglaries the state provided the testimony of Angela Anderson and Johnny Lott. Angela testified that the defendant and Johnny gave her stolen clothes. This circumstantial evidence is not competent to prove that Ricky Lott committed an unauthorized entry that resulted in the theft of the clothes. See State v. Fournier, 395 So.2d 749 (La.1981).
Johnny Lott's testimony is the only evidence that purported to be direct, and we have studied it very closely. When he testified at trial, he refused to implicate the defendant. Taken by surprise, the prosecutor asked him about his prior statement which did implicate the defendant. Johnny freely admitted the inconsistency, explaining that the prior statement was coerced and asserting that only his trial testimony was truthful. The law is settled that a prior inconsistent statement is admissible only on the issue of credibility and not as substantive evidence of a defendant's guilt. State v. Ray, 259 La. 105, 249 So.2d 540 (1971); State v. McMellon, 295 So.2d 782 (La.1974). These cases hold that when a party is surprised by his witness's damaging testimony, the party may impeach him in an effort to limit the adverse impact of the in-court testimony. The effect of impeachment is to erase the damaging testimony, and not to assert the truth of the prior statement. From the legal standpoint, impeached testimony is no evidence of guilt. The appellate court may disregard impeached testimony and assign it no probative value. See State v. Jacobs, supra.
Admittedly, cases also hold that improper use of impeachment evidence may be waived by failure to object or request a limiting instruction. State v. Williams, 445 So.2d 1171 (La.1984); State v. Kimble, 375 So.2d 76 (La.1979). However, waiver is not possible, even absent an objection or request for special limiting instructions, when the entire case against the defendant is predicated on the prior inconsistent statement. State v. Allien, 366 So.2d 1308 (La. 1978). We note the trial court included a limiting instruction in its jury charge. R.p. 176.
Viewing the evidence as a whole, we are constrained to conclude that the entire body of proof against Ricky Lott as pertains to the element of unauthorized *968 entry is predicated on Johnny Lott's prior statement. Without the statement, there is circumstantial evidence that does not begin to exclude every hypothesis of innocence. LSA-R.S. 15:438. The shoeprints were, in the first place, not expertly shown to match the shoes in evidence; and even assuming they matched, the exemplar shoe was neither found in defendant's possession nor ever suggested to belong to him. It was found in Ricky Lott's car when Ricky Lott was not present and it was in the constructive possession of two black males who were unidentified and acknowledged not to be the defendant. A reasonable inference from the evidence would be that the shoes belonged to one of the men from whose possession they were taken, and that one of those men was the culprit in the burglary.
As for the second burglary, the defendant's presence in the vicinity, without more, cannot exclude the reasonable hypothesis that Ricky Lott was a passer-by who happened to be seen in the vicinity. In cases like Lowe and Hammonds, supra, the defendants were caught near the scene of the crime and with stolen goods in their possession; the combined effect of proximity and possession of stolen goods was suggestive of guilt. However, Officer White did not testify that she noticed anything suspicious about Ricky Lott or saw any stolen goods in the car. In fact, his infraction was serious enough to merit only a warning from Officer White. No one ever found any goods on Ricky Lott. A reasonable hypothesis of innocence would be that Ricky Lott was in Ruston to visit his cousin and, unfamiliar with the roads, went the wrong way down a one-way street. It would be inconsistent with the legal presumption of innocence and the standard of reasonable doubt to hold that a man stopped for a traffic offense ten blocks from the scene of a burglary could be convicted on the basis of that fact alone. This circumstantial evidence is almost too weak for serious consideration.
The defendant's disappearance from the hospital is also weak circumstantial evidence. Not only was no foundation laid that he knew he was to be arrested, but his flight could have indicated guilt of another less serious offense, such as possession of stolen things. See State v. Marcello, 385 So.2d 244 (La.1980).
Thus the jury was faced with fragments of circumstantial evidence that only tenuously and hypothetically linked Ricky Lott to the burglaries. This evidence falls far short of dispelling the very reasonable hypotheses of innocence mentioned above. Only the text of Johnny Lott's prior inconsistent statement directly accused the defendant of unauthorized entry, and this evidence is plainly incompetent to prove guilt. State v. Ray, supra. With the trial court's limiting instruction, the jury was not legally authorized to consider Johnny Lott's prior statement as substantive evidence of guilt. The instant situation is so akin to the "only evidence" rule announced in State v. Allien, supra, that we have no alternative but to hold that the prejudicial effect of the statement could not be waived or cured by the instruction. In the context of the evidence offered, this was the only item that could have convinced a rational finder of fact beyond a reasonable doubt that Ricky Lott made an unauthorized entry into the places of business with the intent of committing a theft therein. It was not proof of guilt. The conviction must be reversed.
Johnny Lott's testimony does incriminate the defendant in the crime of illegal possession of stolen things. He stated at one point that Ricky Lott gave stolen clothes to Angela Anderson. R.p. 154. This corresponds to Angela's testimony that Ricky and Johnny Lott had given her several stolen things. R.p. 141. This is substantive, direct evidence of a crime. It would easily prove beyond a reasonable doubt that Ricky Lott illegally possessed stolen things. However, it does not prove beyond a reasonable doubt the charged offense, simple burglary, for which the only appropriate verdicts were guilty of simple burglary, guilty of attempted simple burglary, and not guilty. LSA-C.Cr.P. art. 814 *969 A(44).[1] We cannot render judgment for a nonresponsive offense.
In sum, the case against this defendant consisted of fragments of weak circumstantial evidence that only tenuously implicated him in the charged offenses and certainly did not exclude reasonable hypotheses of innocence; and an out-of-court statement that was demonstrably incompetent to prove guilt. The facts established by the direct testimony and those reasonably inferred from the circumstantial evidence, even when viewed in light most favorable to the prosecution, could not persuade a rational factfinder that the state had proved the elements of the offenses beyond a reasonable doubt. We are also unable to render the nonresponsive verdict that the evidence would support. The conviction and sentence are reversed, and the defendant is ordered discharged.
REVERSED.
FRED W. JONES, Jr., J., concurs in part and dissents in part, and assigns written reasons.
FRED W. JONES, Jr., Judge, concurs in part and dissents in part, and assigns written reasons.
I agree that the record evidence does not support a conviction of the defendant for the burglary of "Early Ages". However, I believe that the following circumstantial evidence, viewed as a whole, was sufficient to persuade a rational fact-finder of defendant's guilt beyond a reasonable doubt of the burglary of "The Clothes Pen:"
1) Defendant was stopped in his car by a police officer for a traffic offense a few blocks from the burglarized store at 3:00 A.M. on the night of the offense.
2) Angela Anderson testified that the defendant gave her some of the merchandise stolen from "The Clothes Pen".
3) Merchandise stolen from the "The Clothes Pen" was found in the dumpster at the apartment of Ms. Anderson and also in her apartment.
4) Defendant fled from the Shreveport hospital, where he was scheduled for knee surgery, apparently upon learning he was to be arrested upon release.
5) The address book taken from defendant contained a list of clothing sizes.
Consequently, I would not reverse the conviction for this burglary.
For these reasons, I concur in part and dissent in part.
NOTES
[1] The offense of unauthorized entry of a place of business was created by LSA-Acts 1986, No. 635. It is now responsive to a charge of simple burglary. LSA-Acts 1986, No. 696. However, the offense did not exist at the time of these incidents. Moreover, this offense also includes the element of unauthorized entry which must be proven beyond a reasonable doubt.