599 So.2d 326 (1992)
STATE of Louisiana, Appellee,
v.
Harold Spencer BELLAMY, Appellant.
No. 23605-KA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1992.
*327 Indigent Defender Office by Richard E. Hiller, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Paul J. Carmouche, Dist. Atty., W. Stanley Lockard and Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before SEXTON, NORRIS and VICTORY, JJ.
NORRIS, Judge.
The defendant, Harold Spencer Bellamy, was charged by bill of information with armed robbery, La.R.S. 14:64. A jury found him guilty as charged by a vote of 11-1. He was later adjudicated a third felony offender and sentenced to 75 years at hard labor without benefit of parole, probation or suspension of sentence. Bellamy now appeals. Aside from assignments that are either abandoned or not considered, he urges the evidence was insufficient to convict. For the reasons expressed, we affirm.

Facts
Early on the morning of Monday, August 20, 1990, the manager of the Shoney's Restaurant on Youree Drive in Shreveport left to bring the night's receipts to the night depository at the Premier Bank directly across the street. The manager, Frank Forwood, and his girlfriend, Lisa McNary, drove Forwood's Cutlass to the main bank building. While McNary waited in the front passenger seat, Forwood carried three bank bags toward the drop box when he heard footsteps approaching.
Turning around, Forwood saw two black men running toward him, apparently having come from an area between Shoney's and the Circle K store next door. Forwood hurried back to the car, tossed the bags in the back seat, jumped behind the wheel and was about to start the engine. However, one of the black men, who had a bandana over his face, stuck a sawed-off shotgun through the open window at Lisa's head and said, "Don't do it." The other man, who had a stocking pulled over his head, held a small handgun on Forwood and ordered, "Give me what you got."
Forwood turned around to reach the bank bags in the rear, but the assailant with the handgun grabbed his shoulder, yanked him out of the car and forced him against the wall of the bank. The other assailant did the same to Lisa and held them both at gunpoint, shouting, "Don't look at me. Keep your face against the wall." Forwood could hear the other man moving around in the car. Then the two men ran off, headed for the rear fence of Shoney's.
Forwood and McNary turned around, got back in the Cutlass and saw another man, wearing a red shirt, running in the same direction as the two assailants. All three scaled the rear fence of Shoney's.
Meanwhile the night porter at Shoney's was sweeping the floor near the front window and watched the whole incident. In fact, Johnny Ruffins usually watched the manager make the night deposit; he testified he had a very good view. He had first noticed a black man in an orange ski net shirt walking across the Shoney's parking lot, looking in different directions (Ruffins gestured to demonstrate) and at Forwood again and again. Ruffins testified this man was "keeping an eye out." He then saw two black men run across the street; one of these held a shotgun on McNary while the other pulled Forwood out of the car. After they made McNary get out, one of the men took the bank bags and McNary's purse; both men ran back across the street. As soon as they began to run, the man in the orange ski net shirt started running with them. Ruffins saw them cross the Shoney's lot and clear the rear fence. Ruffins had already dialed 911 *328 when Forwood and McNary were back at Shoney's, terrified and pounding on the door.
The victims could not give facial descriptions of the assailants because of the masks, and Ruffins could not because of the distance; however, all three witnesses told police that the lookout man was wearing a red or orange shirt.
Sergeant Hall was en route to Shoney's in response to the call when he saw an oncoming Ford Escort strike a curb and stop; its four occupants fled. Inside the car he found two bank bags and a beige purse. He radioed this information and advised that the suspects had run west.
Police Officers were searching on foot near Betty Virginia Park, some six or seven blocks from the abandoned car, when they apprehended a running man in a light red shirt. The subject was Harold Bellamy, who ran from officers for some time, hid between garbage cans, and eventually had to be tackled by three officers. Corporal Day and Officer Laing testified that Bellamy was wearing a light red shirt, which was introduced at trial without objection. Bellamy was taken to the police station and advised of his rights. Later that morning he gave a recorded statement to Officers Hayes and McDonald. Because the statement was full of references to another crime, Officer Hayes testified as to its content at trial.
Bellamy said he had accepted a ride with Corey Gainey, his brother Brandon Gainey, and a friend of theirs, Terry Vincent, around 11 p.m. They rode around a while, drinking, and Bellamy told them he wanted to get out; but they persuaded Bellamy to stay with them. They drove past Shoney's once, but then returned and parked in a dark area near the restaurant. The Gainey brothers got out, saying they would get something to eat; after about three minutes sitting in the car with Vincent, Bellamy decided he would get a soda pop. When he walked up to Shoney's, he saw the Gainey brothers robbing two people with a pistol and a sawed-off shotgun. He then saw them running back with the bank bags. Bellamy ran with them to the rear fence, scaled it, jumped in the car and they all drove off. Later, they saw a police car and Corey Gainey told them to throw the money out; they stopped and scattered, and Bellamy was caught. He insisted he never knew the Gaineys were going to commit a robbery; he thought they parked behind Shoney's to get something to eat. Afterwards, he ran because he was scared; he hopped in the car with them, fled when the police car saw them, and ran until he was caught. Bellamy also said he did not notice the bandanas and the guns until the Gainey brothers were across the street committing the robbery.
Sergeant Hall recovered from the abandoned Escort two bank bags, which Forwood verified had been taken from him earlier. The third bag, containing $401, was never recovered. Also in the car was Lisa McNary's purse, which was missing only a pack of cigarettes. None of the missing items were found on Bellamy's person when he was taken into custody. The bank box keys were found in the grass near Shoney's, and a loaded revolver was found on the ground near the abandoned Escort. The revolver and bullets were introduced at trial without objection.
The witnesses were not able to identify Bellamy in a photo lineup. However, Johnny Ruffins testified that the red shirt that Bellamy was wearing when he was caught looked the same as the one worn by the lookout man in the robbery. The other occupants of the Escort were not called to testify. The defense presented no evidence.
As noted, the jury found Bellamy guilty as charged by a vote of 11-1. The trial court later denied his motions for new trial and post verdict judgment of acquittal. R.p. 255. Bellamy was adjudicated a third felony offender, thus exposing him to a minimum of 66 and a maximum of 198 years at hard labor without benefit. La. R.S. 15:529.1A(2)(a). Bellamy was sentenced to 75 years at hard labor without benefit on July 12, 1991.

Procedural status
Bellamy's appointed counsel filed a motion for appeal on July 17, 1991; formal *329 assignments of error were filed with the trial court on September 6, 1991. Before the formal assignments were briefed, however, Bellamy filed in this court a "Request to File Pro Se Brief," consisting of four alleged errors and sketchy arguments.
While an indigent defendant has a right to counsel as well as the opposite right to represent himself, he has no constitutional right to be both represented and representative. State v. Bodley, 394 So.2d 584 (La.1981); State v. McCabe, 420 So.2d 955 (La.1982). This court has therefore declined to consider the pro se arguments of defendants who are represented by counsel and have not obtained leave of the trial court to serve as co-counsel. State v. Gene, 587 So.2d 18 (La.App.2d Cir.1991); State v. Hughes, 587 So.2d 31 (La.App.2d Cir.1991), writ denied 590 So.2d 1197 (La. 1992). We will not discuss Bellamy's pro se arguments except to note that any suggestion of ineffective assistance of counsel is not apparent on the appellate record and the claim must be consigned to post conviction relief. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Seay, 521 So.2d 1206 (La.App.2d Cir.1988).
Counsel filed its brief on October 17, 1991, arguing two of the five designated assignments. The other assignments, neither briefed nor argued, are abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App.2d Cir.1989), writ denied 558 So.2d 1123 (La.1990).

Discussion
By his second and third assignments Bellamy urges the trial court erred in denying his motions for post verdict judgment of acquittal and for new trial. Collectively, these motions contest the sufficiency of the evidence to sustain the verdict. See State v. Sumler, 395 So.2d 766 (La.1981); State v. Smith, 431 So.2d 106 (La.App. 1st Cir. 1983). While conceding that an eyewitness described his conduct "in the manner of a lookout," Bellamy cites his own statement, which denied any involvement in the robbery, and the absence of evidence that he directly participated in the robbery or received any of the stolen things. The totality of the evidence, he argues, does not prove beyond a reasonable doubt that he was a principal in the offense.
On review of the sufficiency of the evidence to support a criminal conviction, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); La.C.Cr.P. art. 821.
Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. State v. Austin, 399 So.2d 158 (La.1981). Though circumstantial evidence "must exclude every reasonable hypothesis of innocence," La.R.S. 15:438, the Jackson standard applies to the appellate review of all evidence, direct and circumstantial. State v. Wright, 445 So.2d 1198 (La.1984); State v. Lott, 535 So.2d 963 (La.App.2d Cir.1988). Flight and attempt to avoid capture are circumstances from which the trier may infer guilt. State v. Fuller, 418 So.2d 591 (La.1982); State v. Davies, 350 So.2d 586 (La.1977); State v. Lott, supra. When a defendant admits he was present at a robbery and does not argue that his coperpetrators coerced him to participate, these circumstances create a strong inference of intent. State v. Corkern, 461 So.2d 1238 (La.App. 1st Cir.1984).
Credibility determinations are the province of the trier of fact. State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dism. 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984); State v. Holland, 544 So.2d 461 (La.App.2d Cir.1989), writ denied 567 So.2d 93 (La.1990). In the absence of internal contradictions or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier, is sufficient to support the requisite factual conclusion. State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986); State v. Garlepied, 454 So.2d 1147 (La.App. 4th Cir.), writ denied 462 So.2d 189 (La.1984).
*330 Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La.R.S. 14:64A. All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La.R.S. 14:24. A person may be guilty as a principal to armed robbery for standing by as a lookout. State v. Smith, 513 So.2d 438 (La.App.2d Cir.1987); State v. Dominick, 545 So.2d 1149 (La. App. 4th Cir.1989).
Johnny Ruffins first saw a man in an orange ski net shirt who was looking around cagily. When he saw two armed men dart from the shadows to hold up Forwood, Ruffins quickly surmised that the first man was a lookout for the robbers. Ruffins's observation and testimony, if not contradicted by other credible evidence, are sufficient to support the conclusion that the man in the orange ski net shirt was indeed the lookout.
The same man ran away with the robbers immediately after the hold-up, fled when he saw the police car, and eluded officers on foot until he was forcibly captured. These circumstances create a strong inference of guilt. Bellamy was indeed wearing an orange or red ski net shirt when he was captured, further identifying him as the lookout.
Some circumstantial evidence does not support the conviction, notably the absence of any stolen goods on Bellamy's person. However, most of the stolen goods were left in the abandoned Escort and the rest were likely in the hands of the other robbers, who were not apprehended. The fact that Bellamy was not carrying any stolen property does not generate a reasonable hypothesis of innocence.
The most crucial evidence relied on by Bellamy is his statement to Officer Hayes. Bellamy admitted he was with the robbers for several hours before the offense, was present at the offense, fled the scene with the robbers and eluded police on foot, but protested his innocence by denying any inkling that the Gainey brothers were going to commit a robbery and insisting he was not involved. Of course his statement differs from Ruffins's testimony in one crucial respect: Bellamy said the robbery was already happening when he sauntered up to Shoney's. The jury obviously believed Ruffins's version. In all other respects, however, Bellamy's statement appears to be substantially true: his account of the actual robbery and initial flight is similar to that of Ruffins, Forwood and McNary; his admission of seeing the police car and abandoning the Escort is verified by Sergeant Hall; and his capture is corroborated by Corporals Laing and Day. For Bellamy to assert, however, that in over two hours of riding around with the Gaineys and Vincent they never discussed any robbery, or that he never noticed the sawed-off shotgun, revolver and bandanas that had to be stowed somewhere in the Escort, strains belief. It is equally incredible for him to claim that parking in a dark area behind the rear brick wall of Shoney's did not arouse his suspicion, or that he naively walked up to a robbery in progress. The jury was entitled to reject Bellamy's utterly incredible claims of innocence and conclude that he was a participant in the criminal act.
We would note parenthetically that Officer Hayes's rendition of the statement at trial is much less inculpatory than the transcript of the statement filed in response to discovery. R.pp. 46-61. The full statement, of course, was not admissible because it made frequent references to another crime committed by Bellamy. In the prior offense, Bellamy had denied any knowledge that his codefendants were about to commit murder; Bellamy was found guilty of only accessory after the fact. He stated over and over that his involvement in the instant robbery was "just like the last time." R.p. 47, e.g.
Viewed in light most favorable to the state, the evidence admitted at trial proves beyond a reasonable doubt that Bellamy *331 aided and abetted the robbers by serving as a lookout while they committed an armed robbery. These assignments do not present reversible error.

Conclusion
We have also reviewed the record and find nothing we consider to be error patent. La.C.Cr.P. art. 920(2); State v. Oliveaux, 312 So.2d 337 (La.1975). For the reasons expressed, Harold Spencer Bellamy's conviction and sentence are affirmed.
AFFIRMED.