623 So.2d 178 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
R. Kenneth HOOKER, Defendant-Appellant.
No. 25152-KA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1993.
*181 Indigent Defender Office by Richard E. Hiller and John M. Lawrence, Shreveport, for defendant-appellant.
Richard Ieyoub, Atty. Gen., Paul J. Carmouche, Dist. Atty., Ronald R. Inderbitzen, Catherine M. Estopinal, Asst. Dist. Attys., for plaintiff-appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
The defendant, Kenneth Hooker, was charged by bill of information with simple burglary, La.R.S. 14:62. Tried by a six-member jury, he was found guilty as charged and later was adjudicated a third felony offender, La.R.S. 15:529.1. The district court sentenced him to 16 years at hard labor. Hooker now appeals, advancing several assignments of error. For the reasons expressed, we affirm the conviction but vacate the sentence and remand the case for resentencing.

Factual background
The burglary occurred in the early morning of January 18, 1992 at The Tire Center, a tire store on Common Street in downtown Shreveport. According to the manager, Troy Stevenson, the store had been previously entered by intruders who broke the window on a bay door. Stevenson had placed a piece of plywood inside the broken window. Apparently because of the prior entry, Shreveport police were staking out the location.
Officer Peck conducted the stake-out from across the street. Around 2:15 a.m., he saw two men run onto the parking lot and head for the bay door. The first suspect, wearing a long, green trench coat and blue jeans, pushed the board out of the broken window and climbed in. The second man helped the first through the window and glanced around as though keeping a lookout. Officer Peck radioed for assistance. The second man then attempted to clamber through the open window.
Quicker than expected, Officer Rance drove up in a marked police car. The second suspect, who was still in the window, hopped down and ran southwest; Officer Rance chased him by car. The first suspect then climbed out the window and fled to the southeast. Officer Peck pursued him on foot.
The suspect ran down Snow Street and toward a vacant building on Louisiana Avenue. Officer Peck lost sight of him for a few seconds, but saw him run through the open door of a deserted building (Officer Peck called it an old garment factory). Apparently in response to Officer Peck's radio message, other officers converged on the building and surrounded it. Officer Peck shouted to the man inside to come out but there was no response. The officers did not enter, but waited for the K-9 unit to arrive.
Moments later, Officer Ingram and the German Shepherd "Robin" came to the scene. Officer Ingram delivered three more verbal warnings, followed by Robin's barks, to the suspect inside the building, but he did not come out. Officer Ingram then sent the dog in; shortly he saw the suspect walking through a doorway visible from the point of entry. Officer Ingram ordered the suspect to lie down, but he did not comply; at this point Robin bit the suspect on the right forearm and brought him down. Officer Peck identified the suspect as the man in the green coat who successfully entered The Tire Center. He then arrested the suspect, who was identified as Kenneth Hooker.
Other officers at the scene then searched the vacant building; they found no one else inside. According to Officer Ingram, they found no evidence of any kind. The other suspect, who had not completely entered The Tire Center, eluded Officer Rance and was never apprehended.

Discussion
Hooker's fourth and fifth assignments of error have not been briefed. They are therefore deemed abandoned. URCA rule *182 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App.2d Cir.1989), writ denied 558 So.2d 1123 (1990).

Alleged discovery violations
Hooker's first two assignments are based on the fact that he filed a discovery motion but the State did not disclose Officer Ingram's report until he was placed on the witness stand. Hooker urges the trial court erred by denying his motion for mistrial and by permitting Officer Ingram to testify, when sanctions under La.C.Cr.P. art. 729.5 were appropriate.
Hooker filed a timely pretrial motion to discover, among other things, the initial reports of the investigating officers. R. p. 12. In response the State filed several initial reports, but none from Officer Ingram. When the State placed Officer Ingram on the stand, he testified that he had made a report. R. p. 85. Defense counsel moved for a mistrial or, alternatively, to prohibit the officer from testifying. R. pp. 85, 89. The prosecutor stated that he had never seen the report; the officer testified he had a copy of it, which the trial court admitted into evidence and gave copies to the State and defense. The court denied both motions, but called a recess for counsel to review the report and prepare additional cross examination. R. p. 90.
La.C.Cr.P. art. 729.5 provides, in pertinent part:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter [Discovery and Inspection] or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
The article is permissive and does not mandate any particular remedy. Mistrial is a drastic remedy which should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. State v. Sepulvado, 359 So.2d 137 (La.1978); State v. Stills, 600 So.2d 134 (La.App.2d Cir. 1992). Failure to comply with discovery merits mistrial only when the State's conduct substantially affects the defendant's right to prepare a defense. State v. Mitchell, 412 So.2d 1042 (La.1982); State v. DeMoss, 582 So.2d 964 (La.App.2d Cir.1991).
Exclusion of the undisclosed evidence is sometimes an appropriate remedy. See, e.g., State v. Williams, 452 So.2d 1299 (La.App. 3d Cir.1984). However, it is not warranted unless there is substantial prejudice to the defendant. Such prejudice could consist of surprise or a showing that the undisclosed evidence would have changed the defense strategy. State v. Downing, 451 So.2d 1221 (La.App.2d Cir.1984); State v. Alpine, 404 So.2d 213 (La.1981). Trial courts may offset the effect of late disclosure by calling a recess or granting a continuance. State v. Ashley, 463 So.2d 794 (La.App.2d Cir.1985); State v. Busby, 464 So.2d 262 (La.1985), cert. denied 474 U.S. 873, 106 S.Ct. 196, 88 L.Ed.2d 165 (1985). The trial court has wide discretion in fashioning a remedy. State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). The propriety of the remedy depends on the circumstances of the case. State v. Norwood, 396 So.2d. 1307 (La.1981).
In brief Hooker argues he was severely prejudiced because he waived a preliminary examination in exchange for copies of all initial reports; at trial counsel argued that his "understanding," based on these reports, was that Hooker came out of the vacant building voluntarily, and did not have to be subdued by the dog. R. p. 88. Officer Peck's report, however, is virtually identical to his trial testimony that Hooker did not lie down as ordered until the dog bit him. R. p. 19. Only the report of Officer Bobbitt, who was not at the scene but interviewed Hooker at the police station, suggests that Hooker "did exactly what he was told, but the Police Dog bit him on the arm anyhow." R. p. 27. *183 This report recites Hooker's own statement, not the officer's first hand knowledge.
The trial court stated that Officer Ingram's report merely supplemented the others by giving more details of how the dog was used in the arrest, and had no bearing on the suspect's identification. R. pp. 87-88. Defense counsel does not argue that this is plainly wrong, or that he would not have waived a preliminary examination had he received Officer Ingram's report sooner. We perceive no substantial prejudice.
Moreover, the trial court granted a recess during which defense counsel reviewed the report; later, counsel effectively cross examined Officer Ingram. This adequately resolved any potential surprise from the report. The trial court did not abuse its discretion in calling a recess instead of granting a mistrial or excluding the officer's testimony. These assignments do not present reversible error.

The State's hearsay objection
By his third assignment Hooker urges the trial court erred in sustaining the State's hearsay objection to a question posed by defense counsel to Officer Ingram on cross examination. Hooker argues the contested question required only a yes or no answer and was therefore not hearsay.
Defense counsel's question to Officer Ingram was:
Q. Okay. Did you ever ask the suspect if he took part in any burglary or if he was at The Tire Center?
The State objected to this as self-serving hearsay; the trial court sustained the objection. R. p. 104. As Hooker now argues and the State concedes in brief, the question would not have elicited a hearsay response, as it would have been made by the declarant while testifying at the present trial. La. C.Ev. art. 801 C. Also, the question is not inherently self-serving. The trial court's ruling was, strictly speaking, error.
The question, however, was a basis for further questions. If Officer Ingram had replied, "No, I did not ask the suspect," then the line of questioning would have been dropped. But if he had said, "Yes, I did ask," then the next question would surely have sought Hooker's reply. For Officer Ingram to repeat what Hooker told him would be hearsay, unless Hooker's statement was an admission against interest. La.C.Ev. arts. 802, 801 D(2). If the statement is self-serving, it is not admissible. State v. Melerine, 236 La. 930, 109 So.2d 471, 486 (1959); State v. Freeman, 521 So.2d 783 (La.App.2d Cir.1988), writ denied 538 So.2d 586 (1989).
The State's hearsay objection was plainly intended to block the defendant from introducing a potentially self-serving hearsay statement. This was not improper, as the ultimate response would have been inadmissible. Thus the trial court's ruling to sustain the objection was harmless error. La. C.Cr.P. art. 921. This assignment does not present reversible error.

Multiple offender bill
By his sixth assignment Hooker urges the trial court erred in adjudging him a third felony offender. In brief he cites no specific grounds but only asks this court to review the transcript for error patent. We have done so and found nothing. La.C.Cr.P. art. 920(2).

Sufficiency of evidence
By his eighth assignment Hooker urges that the evidence, even viewed in a light most favorable to the State, supports a conviction for only attempted unauthorized entry since the State did not prove actual entry and the intent to commit a felony or any theft therein. La.R.S. 14:62.
The standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App.2d Cir.), writ denied 605 So.2d 1089 (1992). The Jackson standard applies to cases involving both direct and circumstantial evidence. Appellate review in such cases requires the reviewing court to resolve conflicts *184 in the direct evidence in favor of the State. When the direct evidence is thus viewed, the facts thereby established and those inferred from the circumstances must be sufficient to persuade a rational trier of fact beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La. App.2d Cir.1988).
Simple burglary is defined, in pertinent part, as the unauthorized entering of any structure with the intent to commit a felony or any theft therein. La.R.S. 14:62.
Officer Peck testified that a suspect in a green trench coat pushed away the board that was covering the window and climbed in. He further testified that when the police car pulled up, the suspect exited through the window and fled on foot. Officer Peck was certain that the man apprehended in the vacant building, Kenneth Hooker, was the suspect. Troy Stevenson testified that he did not give Hooker permission to enter the building. This is direct evidence of unauthorized entry and of the identity of the accused.
The other element is the intent to commit a felony or any theft therein. Though intent is a question of fact, it need not be proved as a fact. It may be inferred from the circumstances. State v. Kahey, 436 So.2d 475 (La.1983). Flight and attempt to avoid apprehension are circumstances from which the jury may infer guilty conscience. State v. Fuller, 418 So.2d 591 (La.1982); State v. Lott, supra. It is not necessary that an actual theft occur. See State v. Moore, 446 So.2d 917 (La.App. 1st Cir.1984); State v. Burns, 471 So.2d 949 (La.App.2d Cir.1985).
Troy Stevenson testified that The Tire Center holds half a million tires in inventory, various equipment and some money. Hooker entered the business without authority under cover of night and fled when a police car arrived. All of this creates a strong inference that his intent was to commit a theft therein.
Hooker cites, however, State v. Marcello, 385 So.2d 244 (La.1980), as authority for a different inference that can be drawn from similar facts. There a security guard in the NOPSI building after hours heard running water. He investigated and found the defendant in the hallway. When the defendant realized he had been spotted, he darted into a ladies' restroom, climbed out the window and jumped to the roof of an adjacent parking garage. He testified that he had been sleeping in an air conditioning unit on the roof, and entered the building only to use the lavatory. A soiled paper towel and some dirty footprints in the restroom (which had been recently mopped) supported his claim that he entered only to wash up. The Supreme Court found, on these facts, insufficient proof of intent to commit a felony or any theft therein.
In the instant case, defense counsel argued to the jury that Hooker was a homeless person living in the building where he was ultimately found. R. p. 59. The implication is that his reasons for wanting to be inside on a wet winter night were as innocent as the defendant's in Marcello. However, Hooker is not charged with burglary of the vacant building. Indeed, if he knew about the vacant building, he had all the less reason to seek refuge in The Tire Center. The "place to stay" defense based on Marcello is inapplicable. Marcello is also distinguished because in that case there was testimony and physical evidence to support the defendant's claim that his intent in entering was merely to wash his face and not to commit a theft. Here there is no such evidence. The officers found no bedding or clothes in the vacant building. The defendant's sole witness, Mrs. Green, did not testify that he was living in the vacant building. R. pp. 108-109.
The evidence simply does not support Hooker's claim that he had a "legitimate" purpose (other than to commit a felony or any theft) in entering The Tire Center, and the argument does not create reasonable doubt of his guilt. This assignment does not present reversible error.

Excessive sentence
By his seventh assignment Hooker urges the trial court erred in denying his motion to reconsider sentence and in sentencing him to 16 years at hard labor. *185 Hooker was sentenced on November 9, 1992, making the Felony Sentencing Guidelines applicable. La.Acts 1991, No. 22, § 2. Hooker's motion was timely. R. p. 4; La.C.Cr.P. art. 881.1.
At sentencing, the trial court correctly stated that as a third felony offender now convicted of simple burglary, Hooker faced a minimum of eight and a maximum of 24 years at hard labor. R. p. 161; La.R.S. 14:62, 15:529.1 A(2). The trial court also correctly stated that under La.S.G. (Grid cell 4A), Hooker faced a minimum of 96 months (eight years) and a maximum of 120 months (10 years). In this situation, the court should normally impose the minimum sentence provided by law unless aggravating circumstances justify a more severe sentence. La. S.G. § 309 B.
However, the trial court performed a further calculation as follows:
When the sentencing guidelines of the Court came back, he facedout of twelve years, he faced 96 to 120 months. When you calculate that, based on twenty-four months, it comes out to sixteen to twenty years. The Court sentences the defendant to sixteen years at hard labor[.]
In response to the motion to reconsider, the trial court further stated:
He faced, as I said before, under my calculations sixteen to twenty years out of a possible twenty-four years; and I gave him sixteen, which was the least of the two numbers, considering, as you say, it was nonviolent.
Nowhere does the court explain (or does the State argue in brief) how it arrived at the sentencing range of 16 to 20 years. Hooker's correct Grid cell 4A set his exposure at eight to 10 years, and this already takes into account his two prior felony convictions. La. S.G. § 205 C(3). There is no provision for further enhancing the sentence recommended by the Guidelines.
Naturally the court could have imposed a legal sentence under R.S. 15:529.1 (eight to 24 years) by formally departing upward from the designated sentence range under the procedure of La.S.G. § 209 A. Here, however, the court did not formally depart upward, but cited a mitigating circumstance plus a criminal history which was already reflected in the grid cell. The court specifically stated that it was imposing the lowest sentence in the designated range. R. p. 163.
Because the court miscalculated the minimum sentence and then stated some intent to impose the minimum, we will vacate the sentence and remand the case for resentencing.
We would observe that the sentence imposed is legal under R.S. 15:529.1 and could perhaps be supported with valid aggravated circumstances under La.S.G. § 209. However, because of the error discussed we feel a remand is proper so the trial court may exercise its sentencing intent with a proper appreciation of the guidelines.

Error patent
By his ninth assignment, Hooker asks the court to review the entire record for error patent. La.C.Cr.P. art. 920(2). We have done so and find nothing we consider to be error patent. This assignment does not present reversible error.

Conclusion
For the reasons expressed, Kenneth Hooker's conviction is AFFIRMED. The sentence, however, is vacated and the case remanded for resentencing in accord with this opinion.
CONVICTION AFFIRMED. SENTENCE VACATED AND CASE REMANDED FOR RESENTENCING.