792 So.2d 886 (2001)
STATE of Louisiana, Appellee,
v.
Dale P. BISHOP, Appellant.
No. 34,637-KA.
Court of Appeal of Louisiana, Second Circuit.
July 24, 2001.
Rehearing Denied August 16, 2001.
*887 Wilson Rambo, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Stephen T. Sylvester, Assistant District Attorney, Counsel for Appellee.
Before NORRIS, WILLIAMS and PEATROSS, JJ.
NORRIS, Chief Judge.
Dale Bishop was convicted of attempted second degree murder and sentenced to 50 years at hard labor. He appeals his conviction and sentence. We reverse his conviction, convict him of the lesser offense of aggravated battery, La. R.S. 14:34, and remand for re-sentencing.

Facts
Early on the morning of June 15, 1985 the victim, Raymond Eady, went to a vacant lot off McClendon Street in West Monroe to drink beer. While sitting on the steps of a building, he heard people talking near the railroad track; he walked over and introduced himself to Dale Bishop and Kenneth Norris. Norris and Bishop joined Eady on the steps and Eady shared his beer with them. After they finished Eady's beer, Bishop went to get more. When that was gone, Norris left *888 for some more; he did not return immediately.
In a statement to police, Bishop admitted that while Norris was gone, he and Eady had consensual sex. When Norris returned, Bishop led him to some nearby bushes where Eady was sitting, still naked from the encounter. Norris started laughing at him; Eady then insulted Norris, or perhaps pushed him. Before Norris could strike back, Bishop stopped him and told him to stand watch. Norris testified that Bishop then proceeded to hit and kick Eady in the face and to cut him in the groin area with either a knife or a broken bottle. After a few minutes, Norris took up the assault, hitting Eady several times in the head and cutting him once on the upper thigh. According to Norris, Eady did not cry out or fight back because Bishop threatened to kill him if he did.
After beating Eady, Bishop and Norris left him in the bushes, walked back to the steps, sat down, and waited for the next train. About an hour and a half later, three people, including Boyce Hawkins who later testified at trial, walked by; however, Bishop warned them off, shouting several times to stay away because there was a snake in the bushes. Hawkins, however, walked up to Bishop and Norris and heard Eady groaning; Bishop and Norris told him they had been hearing these moans for the last 30 minutes. Hawkins walked to the bushes, saw Eady, and called the police.
Upon arriving, the police investigated the scene and arrested Bishop and Norris for public intoxication. In custody, Norris gave three separate statements: in the first he denied any knowledge of the beating, in the second he admitted he had beaten Eady, and in the third he accused Bishop of inflicting the bulk of Eady's injuries. Bishop gave two statements, first denying any involvement in the beating. Sergeant Jerry Powdrill and Captain Patrick Kelly testified that in the second interview Bishop admitted cutting Eady in the stomach and groin area with a broken beer bottle.
Bishop was charged with attempted second degree murder, found guilty by a jury, and sentenced to 50 years at hard labor. On December 5, 1985, Bishop's attorney filed a notice of appeal. Over the next 15 years, Bishop filed several applications for post conviction relief and eventually obtained a reinstatement of his appeal. He now challenges his conviction and sentence.

Sufficiency of Evidence
Bishop argues that the evidence fails to show beyond a reasonable doubt that he had the specific intent to kill Eady. He also argues that the state failed to prove that he, and not Norris, committed the offense.[1] Bishop concedes that if the state had proved that he inflicted the injuries to Eady, then a conviction for aggravated battery was appropriate.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 *889 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
An appellate court reviewing the sufficiency of evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. The facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
In circumstantial evidence cases, an appellate court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, it evaluates the evidence in the light most favorable to the prosecution to determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994); State v. Washington, 29,784 (La.App.2d Cir.9/26/97), 700 So.2d 1068.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended." La. R.S. 14:27.
A specific intent to kill is an essential element of the crime of attempted second degree murder; a specific intent to inflict great bodily harm is not sufficient for a finding of attempted second degree murder. A defendant's intent to inflict great bodily harm would be sufficient only to find him guilty of a battery. State v. Butler, 322 So.2d 189 (La.1975); State v. Latiolais, 453 So.2d 1266 (La.App. 3 Cir.), writ denied, 458 So.2d 125 (1984).
Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Fuller, 414 So.2d 306 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.), writ denied, 544 So.2d 398 (1989). Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993).
Battery is the intentional use of force or violence upon another La. R.S. 14:33. Aggravated battery is a battery committed with a dangerous weapon. La. R.S. 14:34. A dangerous weapon includes any gas, liquid, or other substance or instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2.
Bishop argues that the state failed to prove that he, and not Norris, severely *890 injured Eady. Specifically, Bishop refers to the multiple and inconsistent confessions by Norris and to Eady's lack of memory.
Norris gave three separate statements, one denying all involvement, one admitting his own involvement, and the third incriminating Bishop; Norris's trial testimony was consistent with his third statement. Eady testified that he did not see who was hurting him and does not remember most of what happened. He stated that his eyes were swollen shut and the only thing he remembered was seeing Bishop with a knife.
Sgt. Powdrill and Captain Kelly both testified that Bishop, in his second interview, stated that he beat Eady and cut him with a broken beer bottle in the groin area and on the stomach. Linda Armstrong, an expert in serology, analyzed blood samples from all three men; Eady was type AB, Norris was type 0, and Bishop was type B. Armstrong stated that she analyzed the blood on Norris and Bishop's clothing. Armstrong stated that there was not sufficient blood on Norris's clothing to type, and the blood on Bishop's clothes and boots was type AB, the same as Eady's. Lastly, Hawkins testified that it was Bishop who yelled several times for him to stay away from the bushes.
Based on Norris's trial testimony, Bishop's own confession, the fact that his clothes, and not Norris's, were primarily splattered with Eady's blood, and Bishop's attempt to hide the crime by warning others away from the area, the jury could reasonably conclude that Bishop inflicted the majority of the injuries upon Eady. Additionally, all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24. Even had the evidence failed to show that Bishop was the one who inflicted the majority of the injuries, his statement that he did cut and strike Eady and his attempt to hide the crime showed that, at the very least, he aided and abetted in the commission of the offense and was a principal.
Bishop next argues that the state failed to prove he had the specific intent to kill. In particular, according to the evidence, Bishop threatened to kill Eady only if he cried out; Norris testified that Eady was silent during the beating. Additionally, after the beating, Bishop sat and listened to Eady moan for over an hour, during which he had ample time to kill Eady had he so desired.
Dr. Michael Landreneau was the treating physician when Eady was admitted into the ER. Dr. Landreneau testified that Eady had sustained severe trauma from blows about the head and chest, had been assaulted by a sharp object that lacerated his eyelids, ears and scrotum, and had sustained a near hemitransect (penis was almost cut in half.)
Dr. Landreneau stated that there was blood in Eady's left ear canal and leakage of rhinorrhea, fluid that bathes the brain, from his nose. Dr. Landreneau testified that the x-rays showed that Eady's nose was broken so badly that the bones were non-existent, and both jawbones were broken in half. He stated that Eady's right cheek bones were smashed and the left cheek bones were completely destroyed; he also had a basilar skull fracture and a "blowout" fracture on the left side of his face. Although these injuries were serious more than 70% of the bones in Eady's face were brokenDr. Landreneau testified that his facial injuries were not life-threatening. However, the cumulative effect of these injuries and the complications, together with Eady's intoxication *891 and the inordinate delay in seeking medical attention, all placed him in danger of losing his life.
Hawkins testified that when he and his friends came into the area, Bishop was attempting to scare them away from where Eady was lying. Bishop yelled at them several times to stay away from the bushes because there was a snake; however, when Hawkins walked over to Eady, Bishop made no further attempts to prevent the discovery of Eady.
In the jury instructions, the trial judge stated: "[A]ny person who having a specific intent to commit a crime does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended ... Second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm." The instructions, however, did not state that a specific intent to kill was necessary in order to find Bishop guilty of attempted second degree murder.[2] Notably, both counsel for Bishop and the prosecutor argued to the jury that a specific intent to inflict great bodily harm was sufficient to render a verdict of guilty of attempted second degree murder; as a result, the jury did not have to decide if Bishop had the specific intent to kill Eady or merely a specific intent to inflict great bodily harm.
The jury instructions and closing arguments of counsel led the jury to believe that either a specific intent to kill or a specific intent to inflict great bodily harm was sufficient to find Bishop guilty of attempted second degree murder. A deadly weapon may be used with a specific intent to maim or seriously injure, rather than kill. State v. Butler, supra. In such a situation the defendant would be guilty of murder if the victim died, but would not be guilty of attempted murder if the injuries did not kill the victim. Id.
Clearly, there is sufficient evidence to find that Bishop had a specific intent to inflict great bodily harm; however, due to the erroneous jury instructions, the jury never had to reach the question of whether Bishop had the specific intent to kill Eady. Although Eady was severely beaten, the evidence shows that the lacerations were the result of efforts to maim him, rather than stab wounds intended to kill. Further, Bishop only threatened to kill Eady if he "hollered" during the beating. After the beating, Bishop sat nearby for over an hour, listening to Eady moan, and yet he did not attempt to kill him. Finally, Bishop made only cursory attempts to prevent Hawkins from discovering Eady, which could have been done an attempt to prevent discovery until after he and Norris had hopped a train. Considering that the jury was erroneously led to believe it did not have to find specific intent to kill, we find the alternative hypothesis i.e., Bishop had a specific intent only to inflict great bodily harmsufficiently reasonable to preclude a verdict of attempted second degree murder. Based on this record, with jury charges and argument of counsel both misleading the jury, the evidence will support, beyond a reasonable doubt, only a conviction of aggravated battery.
When the evidence does not support a conviction of the crime charged, but supports a conviction on a lesser and included offense, this court is authorized to *892 enter a judgment of guilty of the lesser and included offense. State v. Maxie, 33,982 (La.App.2d Cir.11/1/00), 773 So.2d 198. Aggravated battery is a lesser included offense of attempted second degree murder. La.C.Cr.P. art. 841. The evidence before the jury did not support a finding beyond a reasonable doubt that Bishop had the specific intent to kill; however, the evidence shows beyond a reasonable doubt that Bishop intentionally inflicted force or violence, by means of a dangerous weapon, upon Eady's person. Consequently, we render a verdict of aggravated battery against Dale Bishop.

Sentence
Bishop also contends that his sentence is excessive. Having reversed his conviction and convicting him of aggravated battery, we remand the case to the district court for re-sentencing.[3] As such, we pretermit any other assignments of error dealing with his sentence.

Conclusion
For the reasons expressed, we reverse and vacate Bishop's conviction for attempted second degree murder. Finding that the state proved beyond a reasonable doubt that Bishop used a dangerous weapon to inflict a battery upon Eady, we convict Bishop of the crime of aggravated battery and remand the case for re-sentencing.
CONVICTION FOR ATTEMPTED SECOND DEGREE MURDER REVERSED AND VACATED; CONVICTION OF AGGRAVATED BATTERY ENTERED; REMANDED FOR RESENTENCING.

APPLICATION FOR REHEARING
Before NORRIS, C.J., BROWN, WILLIAMS, PEATROSS, and DREW, JJ.
Rehearing denied.
BROWN and DREW, JJ., would grant rehearing.
NOTES
[1] Bishop argued that if the state did prove that he inflicted the injuries on Eady, he was so intoxicated that he lacked the ability to form specific intent. Finding that the evidence is only sufficient to support a conviction of aggravated battery, which does not require specific intent, we pretermit this argument.
[2] This is the subject of Bishop's amended assignment of error. Because of our finding of insufficient evidence, we do not directly address the issue of jury instructions. State v. Hearold, supra. This issue is, nevertheless, closely related to sufficiency and will be mentioned to the extent necessary.
[3] The maximum sentence for aggravated battery is a fine of not more that $5,000, imprisonment with or without hard labor for not more than ten years, or both. La. R.S. 14:34. In default of payment of a fine, the defendant shall be imprisoned for not more than one year. La.C.Cr.P. art. 884. As such, the maximum sentence for aggravated battery which Bishop would have been subject to is 11 years. This record indicates that Bishop has already served the maximum sentence and as such the district court should order his release.