|, PEATROSS, J.
After a jury trial, Defendant, Harold Scott Collins, was convicted of aggravated cruelty to animals, a violation of La. R.S. 14:102.1. The trial court sentenced Defendant to five years at hard labor. For the reasons stated herein, Defendant’s conviction and sentence are affirmed.

FACTS

During the evening of January 4, 1999, Defendant and his roommate, Emily Collins,[1] were sitting in the living room of their apartment at 1703 Highland in Shreveport watching television with Jason Harmer and Thomas Tunnell. Mr. Harmer and Mr. Tunnell were staying with Defendant and Ms. Collins. Mr. Harmer, who was 17 years old at the time, had been asked to leave his mother’s home and had been living on the streets for approximately two weeks before moving into Defendant’s apartment. Mr. Tunnell, who was 44 years old at the time, was staying with Defendant and Ms. Collins because he did not have heat in his apartment.
On that evening, Mr. Harmer expressed how hungry he was. Mr. Tunnell noted that there was little food in the apartment and commented that there was a cat outside that Mr. Harmer could eat. From this point forward, the stories of the par *677 ticipants in this crime are drastically different.
By way of background, the victim of this crime was a cat called “Tabby.” Tabby was initially a stray living generally in and around the building in which Defendant lived. Tabby was subsequently taken in, however, by Heather Mathis who also lived at 1703 Highland. Ms. Mathis’ apartment was on the second floor and Defendant’s apartment was on the first floor. Ms. Mathis testified that, at the time the crime took place, she had taken Tabby into her home, fed her, bought a litter box for her and had become emotionally attached to her.
| ¡¡Mr. Harmer testified that, shortly after the comment was jokingly made about eating the cat, either Defendant or Mr. Tun-nell, or both, left the apartment, returned with Tabby and took her into a back room. While Ms. Collins and Mr. Harmer sat in the living room watching television, they heard a “hiss or a real sharp meow or cry.” They went to the back room where Defendant and Mr. Tunnell were and saw the cat in the corner bleeding and her head appeared “turned around.” Mr. Harmer testified that he wasn’t sure what to do because the cat was “almost dead.” He decided to take the cat into the bathroom and drown her. Mr. Harmer admitted that he drowned the cat, but did so only to end its suffering. He was charged with aggravated cruelty to animals, convicted by a jury of simple cruelty to animals, a violation of La. R.S. 14:102.1(A)(2)(a) and was subsequently sentenced to the maximum penalty of six months imprisonment and five eight-hour days of court-approved community service.
Mr. Tunnell, who was also charged with aggravated cruelty to animals, pled guilty to accessory after the fact to aggravated cruelty to animals and was sentenced to 18 months at hard labor. He was called as a witness for Defendant and testified that neither he nor Defendant were in any way connected with the beating and drowning of the cat. According to Mr. Tunnell, Mr. Harmer brought the cat into the apartment from outside, took her into the bathroom, broke her neck and drowned her. Mr. Tunnell claimed that, thereafter, he, Ms. Collins and Defendant beheaded, skinned, eviscerated and cooked the cat only to be sure that Mr. Harmer ate it because he had killed it. During a very effective line of cross-examination, the assistant district attorney asked Mr. Tunnell to read the facts contained in the bill of information to which he pled guilty, which facts include the harboring, concealment and aid to Defendant, believing that he committed the felony of aggravated cruelty to an animal.
[¡¡Defendant also testified, denying that he participated in any way in Tabby’s death. He stated that Mr. Harmer killed the cat because Mr. Harmer was hungry. Defendant further testified that, after the cat was dead, there was “no reason for the animal to have died for nothing,” so he assisted the others in cooking the cat, stating he was a “good cook.”
Other witnesses testified that they had arrived at Defendant’s apartment after the cat had been tortured and killed and were suspiciously offered and encouraged to eat sloppy joe mix that was in a pan on the stove. Someone made the comment to witness, Jessie Blackborne, that the sloppy joe mix contained cat meat. He thought the group was joking, but asked Defendant if the cat in the sloppy joe mix was Tabby, which Defendant denied. Thereafter, Mr. Harmer took the cat’s head from the freezer (where they had stored it in a Ziploc bag) and showed it to Mr. Blackborne, who recognized the cat as Tabby. A few days later, the cat’s head and hide were taken from the freezer by a witness, Joy Garland, who discovered them by accident. Ms. Garland buried Tabby’s remains off Clyde Fant Parkway. She later directed Detective Richard Quillin, from the Caddo Parish Animal Control, to the burial site and a portion of the remains were retrieved and identified as being from a cat.
*678 Despite Mr. Tunnell’s testimony that Defendant was reasonable and gentle, there were suggestions made during other witnesses’ testimony that Defendant is a Satan worshiper and that Tabby may have been killed as part of a religious sacrificial ritual. Further, Ms. Mathis testified concerning an incident in October 1998 when Defendant struck Tabby in anger. Ms. Mathis was visiting Defendant in his apartment when he discovered an animal had relieved itself on some material in his room. Defendant then struck Tabby three or four times. Ms. Mathis became upset and left Defendant’s apartment. Ms. Mathis’ cousin, Chad Sevells, who was living with Defendant at the time, testified that, after |4Ms. Mathis left the apartment, Defendant found two other places in his room where an animal had relieved itself. Mr. Sevell testified that he then witnessed Defendant hit and kick Tabby, throw her out of the apartment and say that he wanted her dead.
Defendant was arrested and charged by bill of information with aggravated cruelty to animals. On September 14, 1999, a unanimous jury convicted Defendant as charged. Defendant filed post-trial motions for judgment of acquittal, for arrest of judgment, or in the alternative, to quash the bill of information. On September 28, 1999, after hearing extensive argument on the post-trial motions and witness testimony offered in connection with sentencing, the trial court sentenced Defendant to five years at hard labor with a recommendation for the IMPACT Program. Defendant’s motion to reconsider sentence was denied by the court in a ruling dated October 12, 1999. From his conviction and sentence, Defendant lodged this appeal, claiming five assignments of error.

DISCUSSION

Defendant assigns as error that the evidence was insufficient to support his conviction and that his sentence is excessive. Defendant also claims that the trial court did not properly articulate its reasons, in support of his sentence as required by La.C.Cr.P. art. 894.1.

Assignments of Error Nos. 1 & 2: Sufficiency of the evidence

In this appeal, Defendant claims that the evidence was not sufficient to convict him of aggravated cruelty to animals. Specifically, Defendant argues that the State failed to prove, as an element of the crime, that the cat was “owned” by anyone and that the State failed to establish that Defendant was a principal in the commission of this crime.
Under Jackson v. Virginia, 443 U.S. 307; 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim |fiis whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the Defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, *679 and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Bellamy, supra.
| RAggravated cruelty to animals is defined in La. R.S. 14:102.1, in pertinent part, as follows:
B. (1) Any person who intentionally or with criminal negligence tortures, maims, or mutilates any living animal, whether belonging to himself or another, shall be guilty of aggravated cruelty to animals.
* * * * *
(3) Any person who causes or procures to be done by any person any act designated in this Subsection shall also be guilty of aggravated cruelty to animals.
Defendant argues that the State failed to prove at trial that Tabby was “owned” by anyone. Defendant construes the words “belonging to” in the above statute to mean that the State must prove, as an element of the offense, that the animal victim was “owned” by someone. Defendant further argues that the testimony of Heather Mathis does not establish ownership of Tabby. Ms. Mathis admitted that she had not licensed or registered the cat, nor had she taken it to a veterinarian, stating, “we had not gotten to that point yet.” The State responded by arguing that the language of the statute is designed to make clear that a person may not torture their own animal and that the jury could have reasonably chosen to believe that the cat belonged to Ms. Mathis.
Defendant’s attempt at a favorable construction or interpretation of the above statute has no merit under the law or the facts of this case. There is no cited case law regarding this statute to support Defendant’s argument that “belonging to” in fact means “ownership.” Certainly, from the testimony of Heather Mathis, she felt strongly that Tabby “belonged to” her and she reacted consistent with those feelings when the Defendant mistreated Tabby in October 1998. In addition, when it was discovered that this heinous act had occurred, the witnesses reported the incident to Ms. Mathis; and it was Ms. Mathis who reported the crime to police.
|7Clearly, the jury chose to believe Ms. Mathis despite the testimony of Defendant and others that Tabby was a stray. It is not the role of this court to second guess a credibility determination made by the trier of fact. Defendant’s argument on this issue has no merit.
Defendant next argues that the State failed to prove that he was a principal in the commission of this crime. Defendant contends that Jason Harmer’s testimony was so riddled with inconsistencies that it could not have reasonably been believed by the jury. Defendant further contends that the State failed to prove by any direct evidence that Defendant beat or otherwise harmed the cat.
Defendant’s arguments ignore two important factors. First, a determination of guilt may be based on circumstantial evidence. Second, La. R.S. 14:102.1(B)(3) permits a finding of guilt where one does no more than “causes or procures to be done by any person” any act prohibited in sub-paragraph (B)(1).
Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from *680 which the existence of the main fact may be inferred according to reason and common experience. State v. Lilly, 468 So.2d 1154 (La.1985); State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992).
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possiblé hypothesis suggested by Defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia, supra. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994); State v. Owens, supra.
Jason Harmer testified as follows:
District Attorney Q: Okay. Fine. Now, you just said—
A: They brought—
Q: they brought it back inside. Who was this they that brought the cat back inside?
A: It was either Tom or Harold. I can’t say which one. I know Emily was with me, but I know it was outside and then it was back inside. Q: Tom would be Thomas Tunnell. Harold is Harold Collins?
A: Yes, sir.
$ $ $ # $
District Attorney Q: Now, you say they followed the cat into the back room, what happened after that?
A: Well, I’m not sure what happened in the back room. I can’t say to this day. Me and Emily were in the front room watching television. We heard, I guess you could say a hiss or a real sharp meow or cry. We went into the back room, the cat was in the corner. It looked very, it looked terrible. I mean, it was bleeding, I’m not really sure from where. It’s head looked like it was just about turned around.
# # ‡ H*
District Attorney Q: Okay. And nobody was in the back room when you walked back there?
A: No. Mr. — when I walked back there when the cat was there?
Q: Uh-huh.
A: Mr. Harold Collins and Tom was back there.
Q: They were still back there?
A: I understand what you’re asking now.
Q: What were they doing?
19A: They were looking at it. They were no longer hitting it. We got into an argument. Thomas Tunnell was talking about, you know, what he was going to do to it. He said one of you need to kill it. I said finally, I’ll kill it.
If believed by the trier of fact, this testimony was sufficient circumstantial evidence to factually support Defendant’s conviction. The jury could have reasonably concluded that Defendant’s testimony offering an alternative explanation regarding how this crime occurred lacked credibility. As noted above, an effective cross-examination of Mr. Tunnell revealed that his direct testimony appeared perjurious. In addition, from the above quoted testimony, a rational juror could have concluded that Defendant “caused” or “procured” the torture and death of the cat through the actions of Mr. Harmer and Mr. Tun-nell. The jury was properly instructed that a finding of guilt as a principal in the commission of this crime could be based upon Defendant directly or indirectly counseling or procuring someone to tor *681 ture, maim or mutilate any animal. On this record, every reasonable hypothesis of innocence was excluded.
Defendant neither briefs nor argues the assigned error regarding his post-trial motions; and, therefore, the assignment is deemed abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writs denied, 558 So.2d 1123 (La.1990). A motion for post-verdict judgment of acquittal shall be granted, however, only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilt. La.C.Cr.P. art. 821. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992). In the instant cáse, therefore, the trial court did not err in denying Defendant’s motion for post-verdict judgment of acquittal.
Viewing the totality of the evidence presented in a light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable Imdoubt that the evidence presented by the State was sufficient to find Defendant guilty of aggravated cruelty to animals. Defendant’s arguments to the contrary are without merit.

Assignments of Error Nos. 3, 4 & 5: Excessive sentence

In these assigned errors, Defendant contends that his sentence is excessive, that the trial.court failed to comply with La.C.Cr.P. art. 894.1 and that the trial court erred in denying his motion to reconsider sentence.
Initially, it is noted that Defendant did timely file a motion to reconsider sentence which was denied by the trial court. Defendant, however, asserts only that his sentence is excessive and does not allege that the trial court failed to comply with La.C.Cr.P. art. 894.1 as specific grounds in support of the motion. Pursuant to La.C.Cr.P. art. 881.1, the failure to include a specific ground upon which a motion to reconsider sentence may be based precludes Defendant from raising that ground for relief on appeal. Thus, Defendant’s claim of sentencing error is limited to the issue of constitutional exces-siveness, and his fifth assignment of error should not be considered by this court. State v. Mims, 619 So.2d 1059 (La.1993).
Whether the sentence imposed is too severe or excessive depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, this court will not set aside a Insentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345. There is no proportionality guarantee in non-capital cases, unless the reviewing court finds the sentence is grossly disproportionate to the circumstances of the offense. See Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), in which the Court ruled “the Eighth Amendment contains no proportionality guarantee.” See State v. Delaughter, 29,974 (La.App.2d Cir.12/10/97), 703 So.2d 1364, writ denied, 98-0018 (La.5/01/98), — So.2d-, 1998 WL 234691; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ *682 denied, 97-0705 (La.9/26/97), 701 So.2d 979.
La. R.S. 14:102.1(B)(4) sets forth the punishment for the crime of aggravated cruelty to animals as follows:
Whoever commits the crime of aggravated cruelty to animals shall be fined not less than five thousand dollars nor more than twenty-five thousand dollars or imprisoned, with or without hard labor, for not less than one year nor more than ten years, or both.
Defendant argues that his sentence of five years at hard labor is excessive because he had no prior criminal history, because he had made efforts to change his life for the better and because Mr. Tunnell and Mr. Harmer received lighter sentences, although charged with the same crime. Mr. Tunnell, not wanting to risk a possible conviction by a jury, pled to a lesser included offense and received a sentence of 18 months at hard labor. Mr. Harmer was tried and a jury convicted him of the lesser included offense of simple cruelty to animals. He was sentenced to the maximum term of 6 months imprisonment.
A review of the record reveals that Defendant’s assignment lacks merit. Notably, no pre-sentence investigation report was ordered. The trial court went into great detail in explaining why it believed the sentence of five years at hard labor, which was one-half of the maximum penalty of ten years, was justified in this case. h ¡Although it was not required to, the trial court considered the circumstances surrounding the convictions of Mr. Tunnell and Mr. Harmer and their sentences. The trial court was receptive to, and heard testimony from, individuals who tried to guide and counsel Defendant subsequent to his arrest. The trial court listed both the aggravating and mitigating factors it considered in arriving at the five-year sentence. Also, the trial court recommended that Defendant be considered for the IMPACT program. In denying Defendant’s motion to reconsider, the trial court made it clear that it believed that the IMPACT program was appropriate for Defendant, stating the following:
In the event the Defendant is admitted to the Impact Program (which is both physically and mentally rigorous), his actual incarceration period will be lessened in accordance with law. Furthermore, R.S. 15:574.4A(2)(g)(ii) provides the sentencing judge authority to return an offender to court if he fails to meet the department’s suitability or eligibility criteria for the program. In the event Mr. Collins is unable to be admitted to the Impact Program (despite his willingness and through no fault of his own), this Court will be notified and will take whatever action may be appropriate under the circumstances.
It is clear that the trial court gave this matter considerable attention in arriving at what, in the exercise of its discretion, it perceived to be an appropriate sentence for Defendant. Under the circumstances of this case, we do not believe that the sentence imposed is so shocking or disproportionate to the crime committed or inappropriate for this particular Defendant as to require that it be set aside. We note no abuse of the trial court’s discretion in the sentence imposed, nor a basis for Defendant’s claim of excessiveness.
Accordingly, these assignments of error have no merit.

CONCLUSION

No patent error was noted.
For the foregoing reasons, Defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Ms. Collins is not related to Defendant.